2007 OK 78

**ARKANSAS VALLEY STATE BANK, an Oklahoma corporation, Appellee,**

v.

**John W. PHILLIPS, Jr., an individual, and Wilbanks Securities, Inc., an Oklahoma corporation, Defendants,**

and

**Bill V. Wilkinson, attorney, Appellant.**

No. 104,021.

Supreme Court of Oklahoma.

Oct. 16, 2007.

---

**38.** Title 12 O.S. Supp.2004 § 696.4(C).

Ron D. Martinek, Topeka, KS, for Appellee.

Bill Wilkinson, Tulsa, OK, for Appellant/Defendants.

KAUGER, J.

¶1 The issue presented is whether the district court properly granted the motion to disqualify the defendants' counsel. We find that it did not.

## FACTS

¶2 The Appellee, Arkansas Valley State Bank (Bank) had contracted with Wilbanks Securities, Inc. (Wilbanks Securities) to provide customers of the Bank with investment counseling and services, which the Bank could not provide legally on the Bank's premises.[1] While the record is unclear, apparent-

---

**1.** The Gramm–Leach–Bliley Act of 1999 enabled national banks to contract with broker-dealers to offer securities brokerage services on or off bank premises. Title 15 U.S.C.A. § 78c(a)(4)(B) (2006) provides in pertinent part:

A bank shall not be considered to be a broker because the bank engages in any one or more of the following activities under the conditions described:
(i) Third party brokerage arrangements. The bank enters into a contractual or other written

ly when Wilbanks Securities sought to terminate its relationship with the Bank, a dispute arose between the parties about the ownership of certain records. On May 27, 2004, the Bank brought an action in the District Court of Tulsa County against Wilbanks Securities and John W. Phillips (Phillips), a dual employee of Wilbanks Securities and the Bank, for breach of the employment agreement. On June 21, 2004, Phillips and Wilbanks Securities filed counterclaims against the Bank and its Chief Executive Officer, Terry M. Almon (Almon). In November and December of 2005, Phillips and Wilbanks Securities conducted depositions of several officers, directors, and employees of the Bank. In January of 2006, the Bank corrected the deposition testimony of nine witnesses by filing errata sheets.

¶3 On February 8, 2006, one of the deposed witnesses, Daniel G. Witham (Witham), a dual employee of the Bank and UVEST Financial Services, Inc., an investment center that had replaced Wilbanks Securities on the Bank's premises, was terminated. Witham retained Phillips and Wilbanks Securities' attorney, Bill V. Wilkinson (Attorney/Appellant), to represent him in a wrongful termination suit against the Bank and Almon. Witham filed suit in the United States District Court for the Northern District of Oklahoma on February 22, 2006.

¶4 On March 17, 2006, Phillips and Wilbanks Securities filed a Motion for Protective Order and Application for Sanctions by Defendants in this cause, alleging that the errata sheets filed in the Banks' action were improper attempts to alter testimony. On May 26, 2006, the Bank sought to disqualify the attorney and his law firm from representing Phillips and Wilbanks Securities. The Bank alleged that the attorney had received confidential work product information about the Bank's breach of the employment agreement suit against Phillips and Wilbanks Securities from Witham during his representation of Witham in the wrongful termination suit against the Bank. Phillips and Wilbanks Securities countered that the motion to disqualify counsel was merely a tactic to prevent the district court from uncovering the alleged improprieties in the errata sheets.

¶5 On September 8, 2006, the district court granted the Bank's motion to disqualify the attorney, finding there was "beyond a nagging suspicion" that Witham had disclosed confidential work product information to the attorney.[2] The district court explicitly declined to make a finding that the attorney had conducted himself in an improper or unethical manner. On October 27, 2006, the district court's order was memorialized and filed.[3]

¶6 On November 22, 2006, the attorney, Phillips and Wilbanks Securities filed an Application to Assume Original Jurisdiction, Petition for Writ of Mandamus, and Petition for Writ of Prohibition. On December 11, 2006, this Court recast the application as a timely appeal from the district court's order. The cause was assigned to the Court of Civil Appeals on April 4, 2007, and on June 12, 2007, we withdrew the assignment and retained the cause.

¶7 BECAUSE THE DISTRICT COURT APPLIED THE "APPEARANCE OF IMPROPRIETY" STANDARD, RESOLVED ALL DOUBT IN FAVOR OF DISQUALIFICATION AND MADE NO FINDING IN ITS ORDER THAT WILKINSON HAD

arrangement with a broker or dealer registered under this chapter under which the broker or dealer offers brokerage services on or off the premises of the bank....

2. The Honorable J. Michael Gassett, Transcript of September 8, 2006 Motion Hearing, p. 27 provides in pertinent part:

... So, now we're, I think, beyond a nagging suspicion....

3. The District Court's October 27, 2006 Order, Record, p. 743 provides in pertinent part:

... IT IS HEREBY ORDERED:

1. Plaintiff's Motion to Disqualify is granted, except that Bill V. Wilkinson and the Wilkinson Law Firm may represent Defendant and Third–Party Plaintiff John W. Phillips, Jr. And Defendant and Third–Party Plaintiff Wilbanks Securities, Inc. with regard to drafting this order, in any appeal of this order, and in any proceedings regarding a request to lift the stay hereinafter ordered.

2. The Court is silent on the issue of whether Bill V. Wilkinson has conducted himself in an improper or unethical manner....

**KNOWLEDGE OF MATERIAL AND CONFIDENTIAL INFORMATION, THE MOTION TO DISQUALIFY COUNSEL WAS IMPROPERLY GRANTED.**

¶8 An order granting a motion to disqualify counsel is a final order subject to appellate review.[4] Before the trial court can determine that an attorney should be disqualified based on conflict of interest or improper possession of confidential information, it must hold an evidentiary hearing and make a specific factual finding in its order of disqualification that the attorney had knowledge of material and confidential information.[5] When reviewing the order, we review the trial court's findings of fact for clear error and carefully examine *de novo* the trial court's application of ethical standards.[6]

¶9 The central point of contention in this cause is determining the proper test a trial court must apply when faced with a motion to disqualify counsel. The Bank contends that an "appearance of impropriety" test, based on Canon Nine of the ABA Model Code of Professional Responsibility,[7] should be employed. The Bank argues that while the phrase "appearance of impropriety" does not appear in the Oklahoma Rules of Professional Conduct, the concept still survives as an element of Rule 8.4 of the Oklahoma Rules of Professional Conduct.[8] The Bank further contends that any doubt about the appearance of the propriety of an attorney's actions is to be resolved in favor of disqualification. Wilkinson argues that the "appearance of impropriety" test was abrogated by the adoption of the Oklahoma Rules of Professional Conduct in 1988 and that the heavy burden to establish the necessity of disqualifying counsel rests with the movant. We agree with Wilkinson.

¶10 The due process clauses of the United States[9] and the Oklahoma Constitutions[10] provide that certain substantive rights—life, liberty and property—cannot be deprived except by constitutionally adequate procedures. Once it is determined that due

---

4. *Piette v. Bradley & Leseberg*, 1996 OK 124, ¶1, 930 P.2d 183. Title 12 O.S.2001 § 953 provides:
   An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding or upon a summary application in an action after judgment, is a final order, which may be vacated, modified or reversed, as provided in this article.

5. *Piette v. Bradley & Leseberg*, see note 4, supra at ¶2.

6. *Gladstone v. Bartlesville Ind. Sch. Dist. No. 30*, 2003 OK 30, ¶5, 66 P.3d 442 [Contested issues of law are reviewed *de novo*.]. See also *Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, 380 F.3d 1331, 1338 (11th Cir.2004); *United States. v. Bailey*, 327 F.3d 1131, 1138 (10th Cir.2003); *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 588 (3d Cir.1999); *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1310–1311 (5th Cir.1995); *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 145 (4th Cir. 1992); *Woods v. Covington County Bank*, 537 F.2d 804 (5th Cir.1976).

7. Canon Nine of the ABA Model Code of Professional Responsibility provides:
   A lawyer should avoid even the appearance of professional impropriety.

8. Rule 8.4, Oklahoma Rules of Professional Conduct, 5 O.S.2001 Ch. 1, App. 3–A, provides:
   It is professional misconduct for a lawyer to:
   (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
   (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
   (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
   (d) engage in conduct that is prejudicial to the administration of justice;
   (e) state or imply an ability to influence improperly a government agency or official; or
   (f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

9. U.S. Const. amend. 14, § 1 provides in pertinent part:
   ... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

10. Okla. Const. art. 2, § 7 provides:
    No person shall be deprived of life, liberty, or property without due process of law.

process applies, the question becomes: what process is due? [11] At a minimum, deprivation of a property right by adjudication must be preceded by notice and an opportunity for hearing appropriate to the nature of the case.[12]

¶ 11 The United States [13] and Oklahoma Constitutions [14] provide that accused parties in criminal prosecutions have the right to the assistance of counsel. These guarantees do not extend to civil proceedings.[15] A right to counsel may have its constitutional basis in the general constitutional guarantees of due process found in the United States [16] and Oklahoma [17] Constitutions. The right to counsel mandated by due process of law is generally confined to criminal prosecutions.[18]

¶ 12 The right to counsel may also be based on statutory authority.[19] However, even when there is no constitutional or statutory right to be *furnished* counsel, a party litigant in a civil proceeding still has a fundamental right to *employ* and be heard by counsel of his or her own choosing.[20] The right to select counsel without state interference is implied from the nature of the attorney-client relationship in our adversarial system of justice, where an attorney acts as the personal agent of the client and not the state.[21] It is also grounded in the due process right of an individual to make decisions affecting litigation placing his or her property at risk. An individual's decision to employ a particular attorney can have profound effects on the ultimate outcome of litigation.[22] Legal practitioners are not interchangeable commodities.[23] Personal qualities and pro-

11. *In re A.M. & R.W.*, 2000 OK 82, ¶ 10, 13 P.3d 484; *DuLaney v. Oklahoma State Dept. of Health*, 1993 OK 113, ¶ 10, 868 P.2d 676; *Walters v. Oklahoma Ethics Comm'n*, 1987 OK 103, ¶ 14, 746 P.2d 172.

12. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Patel v. OMH Medical Center, Inc.*, 1999 OK 33, ¶ 41, 987 P.2d 1185; *Blocker v. Martin*, 1994 OK 17, ¶ 4, 868 P.2d 1316; *Ford v. Ford*, 1988 OK 103, ¶ 10, 766 P.2d 950.

13. U.S. Const. amend. 6 provides in pertinent part:

   In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.

   The Sixth Amendment is incorporated and made applicable to the states by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. U.S. Const. amend. 14, § 1, see note 9, supra.

14. Okla. Const. art. 2, § 20 provides in pertinent part:

   In all criminal prosecutions the accused ... shall have the right to be heard by himself and counsel ...

15. *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *Kiddie v. Kiddie*, 1977 OK 69, ¶ 7, 563 P.2d 139.

16. U.S. Const. amend. 14, § 1, see note 9, supra.

17. Okla. Const. art. 2, § 7, see note 10, supra. *See McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1262 (5th Cir.1983); *Kiddie v. Kiddie*, note 15, supra at ¶ 10.

18. *Kiddie v. Kiddie*, see note 15, supra; *Robertson v. State ex rel. Lester*, 1972 OK 126, ¶ 17, 501 P.2d 1099.

19. *See* 2 O.S. Supp.2002 § 6–404 [Board of Agriculture hearings for one not abiding by disease control measures.]; 10 O.S.2001 § 24 [hearings to terminate parental rights.]; Rule 29, Rules for District Court of Oklahoma, 12 O.S.2001 Ch. 2, App. [civil contempt proceedings.]; 22 O.S. Supp.2005 § 991(b) [parole revocation hearings.]; 30 O.S.2001 § 3–107 [guardianship proceedings.]; 43A O.S. Supp.2006 § 5–411 [involuntary commitments.]; 75 O.S.2001 § 310 [Administrative Procedures Act.]. For examples of federal statutory rights to counsel, *see* *McFarland v. Scott*, 512 U.S. 849, 854, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994) [habeas corpus proceedings.]; *Middendorf v. Henry*, 425 U.S. 25, 28, fn. 4, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976) [special courts martial.]; *Morales–Izquierdo v. Gonzales*, 486 F.3d 484, 497 (9th Cir.2007) [Administrative Procedures Act.].

20. *Towne v. Hubbard*, 2000 OK 30, ¶ 14, 3 P.3d 154; *State ex rel. Howard v. Oklahoma Corp. Comm'n*, 1980 OK 96, ¶ 23, fn. 6, 614 P.2d 45; *Kiddie v. Kiddie*, see note 15, supra at ¶ 11; *Bancroft v. Board of Governors of Registered Dentists*, 1949 OK 216, ¶ 7, 210 P.2d 666.

21. *Faretta v. California*, 422 U.S. 806, 820, fn. 16, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Towne v. Hubbard*, see note 20, supra.

22. *Towne v. Hubbard*, see note 20, supra.

23. *Hayes v. Central States Orthopedic Specialists, Inc.*, 2002 OK 30, ¶ 9, 51 P.3d 562; *Towne v. Hubbard*, see note 20, supra. *See also United States v. Laura*, 607 F.2d 52, 56 (3d Cir.1979).

fessional abilities differ from one attorney to another, making the choice of a legal practitioner critical both in terms of the quality of the attorney-client relationship and the type and skillfulness of the professional services to be rendered.[24]

¶ 13 Nevertheless, the right to select one's own counsel is not absolute.[25] A litigant's choice of counsel may be set aside under limited circumstances, where honoring the litigant's choice would threaten the integrity of the judicial process.[26] This most often arises where an attorney's compliance with ethical standards of professional responsibility are challenged.[27] It is this Court's nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the law, and in doing so, to preserve public confidence in the bar and the judicial process.[28] However, motions to disqualify counsel for failure to comply with the Rules of Professional Conduct are not to be used as procedural weapons.[29] Disqualification is such a drastic measure that it should be invoked if, and only if, the Court is satisfied that real harm is likely to result.[30]

¶ 14 The Bank's first argument supporting its motion to disqualify counsel is an allegation that although the attorney knew Witham was represented by counsel, the attorney elicited from him information about the Bank's suit against Phillips and Wilbanks Securities. The Bank argued that this was a violation of Rule 4.2 of the Oklahoma Rules of Professional Conduct.[31] While it is not entirely clear from the record, the district court appears to have rejected the Bank's argument on the grounds that Witham did not have the right to speak for and bind the Bank,[32] and thus Rule 4.2 did not apply.[33]

24. *Hayes v. Central States Orthopedic Specialists, Inc.*, see note 23, supra; *Towne v. Hubbard*, see note 20, supra; *United States v. Laura*, see note 23, supra.

25. *Hayes v. Central States Orthopedic Specialists, Inc.*, see note 23, supra; *Towne v. Hubbard*, see note 20, supra at ¶ 15. *See also Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *McCuin v. Texas Power & Light Co.*, see note 17, supra at 1263; *United States v. Laura*, see note 23, supra at 57.

26. *Hayes v. Central States Orthopedic Specialists, Inc.*, see note 23, supra; *Towne v. Hubbard*, see note 20, supra at ¶ 15.

27. *Towne v. Hubbard*, see note 20, supra at ¶ 15.

28. *State ex rel. Okla. Bar Ass'n v. Pacenza*, 2006 OK 23, ¶ 18, 136 P.3d 616; *State ex rel. Okla. Bar Ass'n v. Mayes*, 1999 OK 9, ¶¶ 22–23, 977 P.2d 1073; *In re Reinstatement of Smith*, 1994 OK 19, ¶ 6, 871 P.2d 426.

29. "Scope," Oklahoma Rules of Professional Conduct, 5 O.S.2001 Ch. 1 App. 3–A provides in pertinent part:
... The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons....

30. *Hayes v. Central States Orthopedic Specialists, Inc.*, see note 23, supra at ¶ 10. *See also Macheca Transport Co. v. Philadelphia Indem. Co.*, 463

F.3d 827, 833 (8th Cir.2006) [The extreme measure of disqualifying counsel of choice should be used only when absolutely necessary.]; *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003) [The right to counsel of choice may only be overridden for compelling reasons.]; *Optyl Eyewear Fashion Intern. Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir.1985) [Because of potential for abuse, disqualification motions should be subject to particularly strict judicial scrutiny.]; *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir.1983) [Movant must meet a heavy burden to remove opposing counsel.]; *McCuin v. Texas Power & Light Co.*, see note 17, supra at 1263 [There must be compelling reasons to deny choice of counsel.].

31. Rule 4.2, Oklahoma Rules of Professional Conduct, 5 O.S.2001 Ch.1, App. 3–A provides:
In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

32. The Honorable J. Michael Gassett, Transcript of July 18, 2006 Motion Hearing, p. 15 provides in pertinent part:
... nowhere is there any evidentiary material that he had the right to speak for and bind the corporation explicitly....

33. *Fulton v. Lane*, 1992 OK 25, ¶ 1, 829 P.2d 959 provides in pertinent part:
... Rule 4.2 applies to only those employees who have the legal authority to bind a corporation in a legal evidentiary sense, i.e., those

¶ 15 The Bank's second argument is that the attorney had induced Witham to disclose confidential information about the Bank's suit against Phillips and Wilbanks Securities. The Bank maintained that this was a violation of Rule 1.6 of the Oklahoma Rules of Professional Conduct [34] because Rule 1.6 imposes a duty on attorneys not only to refrain from disclosing confidential information, but also a correlative duty to refrain from inducing others to disclose confidential information. The attorney responded by calling Witham to the stand. Witham testified that he had not disclosed any confidential information about the Bank's suit against Phillips and Wilbanks Securities to the attorney.[35]

¶ 16 The common thread running through each of the Bank's arguments is essentially that the attorney was improperly in possession of confidential work product information about the Bank's suit against Phillips and Wilbanks Securities.[36] Because the facts were disputed, the substance of the argument on the motion to disqualify boiled down to whether the district court was required to grant the motion to disqualify if there was any doubt that the attorney's actions invoked

employees who have "speaking authority" for the corporation....

**34.** Rule 1.6(a), Oklahoma Rules of Professional Conduct, 5 O.S.2001 Ch.1, App. 3–A provides in pertinent part:

(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation....

**35.** Testimony of Daniel Witham, Transcript of July 24, 2006 Motion Hearing, p. 10, provides in pertinent part:

... The Court:—did you ever disclose to Mr. Wilkinson anything of a confidential nature regarding the bank?

...

The Witness: ... My answer would be no, sir....

**36.** The new Rule 1.18 of the Oklahoma Rules of Professional Conduct may provide guidance in similar situations in the future. *See* Dean Lawrence K. Hellman, Oklahoma County Bar Association Briefcase, September 2007 at 3, which provides:

... [T]here is new Rule 1.18 addressing "Duties to Prospective Clients." Experience with the Rules of Professional Conduct in many states led practitioners and courts to conclude that there is insufficient guidance in the current Rules to guide lawyers in that uncertain period when there are discussions with a prospective client as to whether a formal client-lawyer relationship will be formed. This entirely new provision provides directions as to how a lawyer, or at least the lawyer's firm, can avoid being disqualified from a subsequent representation adverse to a party who earlier was a "prospective client," even when the subsequent representation pertains to the same or a substantially related matter as the one with which discussions took place with the "prospective client." The keys: (1) Caution prospective clients not to disclose information that "could be significantly harmful" to that party if that lawyer or her firm ends up later

on the other side of the case; (2) make sure that any single lawyer in the firm who actually receives information from the potential client that "could be significantly harmful" to that party is properly and timely "screened" in the manner prescribed in Rules 1.18 and 1.0(k) and "promptly" give written notice of the situation to the prospective client....

Rule 1.18, The Oklahoma Rules of Professional Conduct, 5 O.S. Supp.2008 Ch 1., App. 3–A will provide:

(a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

(b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.

(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

(d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:

(1) both the affected client and the prospective client have given informed consent, confirmed in writing, or:

(2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and

(i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

the appearance of impropriety. The district court was troubled by the lack of controlling authority for the Bank's proposition,[37] but it appears to have ultimately accepted it.[38]

¶ 17 Various federal and state courts have crafted a variety of tests for reviewing a motion to disqualify counsel. These range from stringent tests that limit a trial court's discretion and place a heavy burden on the moving party, to more expansive tests that give a trial court broader discretion and require a lesser showing by the moving party.[39] For example, in *Centimark Corp. v. Brown Sprinkler Serv. Inc.*, 85 Ohio App.3d 485, 620 N.E.2d 134, 137 (1993), the court adopted a stringent test, holding:

> While looking toward the Code of Professional Responsibility for guidance in considering the disqualification of counsel, the trial court should be mindful that disqualification is a drastic measure. In fact, a violation of the Code of Professional Responsibility alone should not result in a disqualification, unless disqualification is found to be absolutely necessary. Certainly, more is required than an allegation of an ethical violation.... [Precedent] suggest[s] the guideline of "a reasonable possibility that some specifically identifiable impropriety actually occurred."

In *MMR/Wallace Power & Indus., Inc. v. Thames Assoc.*, 764 F.Supp. 712, 718 (D.Conn.1991), the court applied a broader test:

> [I]f the court concludes that the asserted course of conduct by counsel threatens to affect the integrity of the adversarial process, it should take appropriate measures, including disqualification, to eliminate such taint. Even an appearance of impropriety may, under the appropriate circumstances, require prompt remedial action by the court. In assessing the possibility that the trial may be prejudiced by an attorney's unethical conduct, the district court must bear in mind the fact that: The preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount. Recognizably important [is defendant's] right to counsel of [its] choice ... T[his] consideration must yield, however, to considerations of ethics which run to the very integrity of our judicial process. Accordingly, "any doubt is to be resolved in favor of disqualification."

In *Casco Northern Bank v. JBI Associates, Ltd.*, 667 A.2d 856, 859 (Me.1995), the court applied an even more expansive test:

(ii) written notice is promptly given to the prospective client.

**37.** The Honorable J. Michael Gassett, Transcript of July 24, 2006 Motion Hearing, p. 75–76, provides in pertinent part:

... I'm just not sure if—if the 8.4 rule that the bank wants me to apply now is consistent with or is it just an extension of Canon 9, because a lot of the cases talk about Canon 9 and appearance of impropriety, and it's—it's real difficult to get a handle on whether Oklahoma has that ... rule or not. So I have a question as to whether the Canon 9 appearance standard is still with us or not....

**38.** The Honorable J. Michael Gassett, Transcript of September 8, 2006 Motion Hearing, p. 23, provides in pertinent part:

... Are you saying that you see no impropriety in discussing with Mr. Witham any information that he learned while he was an employee at the Bank in regards to this case? ...

**39.** *See Herrmann v. GutterGuard, Inc.*, 199 Fed. Appx 745, 753–754 (11th Cir.2006) [Movant must show a violation of the rules of professional conduct and compelling reasons for disqualifying counsel.]; *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex.1990) [Movant must show a violation of the rules of professional conduct.]; *Alexander v. Superior Court in and for Maricopa County*, 141 Ariz. 157, 685 P.2d 1309, 1313 (1984) [Movant must show a sufficient reason and extreme circumstances to disqualify counsel.]; *Board of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246–1247 (2d Cir.1979) [Movant must show that attorney's conduct will taint the proceedings.]; *Hall v. Tucker*, 169 Ohio App.3d 520, 863 N.E.2d 1064, 1067–1068 (2006) [A trial court has broad discretion, but may only grant the motion when absolutely necessary.]; *Evans v. Artek Sys. Corp.*, note 30, supra [Movant has a "heavy burden".]; *Oaks Management Corp. v. Superior Court*, 145 Cal.App.4th 453, 462, 51 Cal.Rptr.3d 561 (Cal.Ct.App.2006) [Trial court has inherent authority to disqualify counsel and often does so for a violation of ethical rules.]; *Koch v. Koch Indus.*, 798 F.Supp. 1525, 1530–1531 (D.Kan.1992) [Trial court must grant the motion on a showing that attorney's conduct taints the proceeding, must balance interest in integrity of the process with right to counsel of choice, all doubts must be resolved in favor of disqualification.]; *Cordy v. Sherwin–Williams*

The standard of review for orders disqualifying or refusing to disqualify counsel is highly deferential ... Although the movant has the burden of showing the grounds for disqualification, producing more than "mere speculation" and sustaining "a reasonable inference of a[n ethical] violation," doubts should be resolved in favor of disqualification.

In the case of *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir.2003), the court took a middle course:

Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if "compelling reasons" exist. The party moving to disqualify counsel bears the burden of proving the grounds for disqualification.

However, each test seeks to balance the same important interests: 1) a party litigant's right to employ the counsel of his or her choice; 2) a moving party's right to maintain the confidentiality of certain information; and 3) the public's interest in preserving the integrity of the judicial process.[40]

¶ 18 Here, although the trial court did not explicitly hold that the "appearance of impropriety" standard was applicable, it used the term "impropriety" in questioning the attorney.[41] Although we have never addressed this specific issue, many jurisdictions have used the "appearance of impropriety" test to review motions to disqualify counsel while the phrase appeared in pertinent ethical standards in effect at the time of the decision,[42] but usually the showing of an "appearance of impropriety" alone does not support a motion to disqualify counsel. In *Board of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1247 (2d Cir.1979), the court said:

We believe that when there is no claim that the trial will be tainted, appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases. This is particularly true where, as in this case, the appearance of impropriety is not very clear.[43]

Only a few jurisdictions have explicitly continued to use the standard after adopting the Rules of Professional Conduct.[44] The current trend among states which have adopted the Rules of Professional Conduct is to aban-

---

Co., 156 F.R.D. 575, 584 (D.N.J.1994) [All doubts must be resolved in favor of disqualification.].

**40.** *Klein v. Bristol Hosp.*, 50 Conn.Supp. 160, 915 A.2d 942, 946 (2006) [The competing interests at stake in the motion to disqualify are: (1) the defendant's interest in protecting confidential information; (2) the plaintiffs' interest in freely selecting counsel of their choice; and (3) the public's interest in the scrupulous administration of justice.].

**41.** See note 38, supra.

**42.** The "appearance of impropriety" standard was applied while it was still in effect in pertinent ethical rules in: *MMR/Wallace Power & Indus., Inc. v. Thames Assoc.*, 764 F.Supp. 712, 718 (D.Conn.1991); *State ex rel. Blackhawk Enterprises, Inc. v. Bloom*, 219 W.Va. 333, 633 S.E.2d 278, 282–283 (2006); *Cody v. Cody*, 179 Vt. 90, 889 A.2d 733, 738 (2005); *Morse v. Clark*, 890 So.2d 496, 498 fn. 1 (Fla.Dist.Ct.App.2004); *Lennartson v. Anoka–Hennepin Indep. School Dist. No. 11*, 662 N.W.2d 125, 131 (Minn.2003); *Winblad v. Deskins*, 150 Ohio App.3d 527, 782 N.E.2d 160, 162 (2002); *Niou v. Austin*, 59 Va. Cir.190 (Va. Cir. Ct.2002); *Jaggers v. Shake*, 37 S.W.3d 737, 740 (Ky.2001); *Schaffer v. Louisiana State Bd. of Dentistry*, 745 So.2d 602, 603 (La. 1999); *Norman v. Norman*, 333 Ark. 644, 970 S.W.2d 270, 273 (1998); *Love v. State*, 202 Ga. App. 889, 416 S.E.2d 99, 101–102 (1992); *O'Neil*

v. Bergan, 452 A.2d 337, 345 (D.C.1982); Hahn v. Boeing Co., 621 P.2d 1263, 1267 (Wash.1980).

**43.** The inability of a showing of an "appearance of impropriety" alone to carry a motion to disqualify counsel was noted in: *Community Broadcasting of Boston, Inc. v. F.C.C.* 546 F.2d 1022, 1028 fn. 39 (D.C.Cir.1976); *In re Dayco Corp. Derivative Sec. Litigation*, 102 F.R.D. 624, 632 fn. 9 (S.D.Ohio 1982); *Connolly v. Napoli, Kaiser & Bern, LLP*, 12 Misc.3d 530, 817 N.Y.S.2d 872, 879 (N.Y.Sup.Ct.2006); *Amparano v. ASARCO, Inc.*, 208 Ariz. 370, 93 P.3d 1086, 1094 (Ct.App. 2004); *Clinard v. Blackwood*, 46 S.W.3d 177, 186–188 (Tenn.2001); *Cheves v. Williams*, 993 P.2d 191, 206 (Utah 1999); *Griffith v. Taylor*, 937 P.2d 297, 303 (Alaska 1997); *Weaver v. Millard*, 120 Idaho 692, 819 P.2d 110, 115–116 (Ct.App. 1991); *City of Philadelphia v. District Council 33, American Fed. of State, County, & Municipal Employees AFL–CIO*, 503 Pa. 498, 469 A.2d 1051, 1053–1054 (1983).

**44.** The following state courts have continued to use the "appearance of impropriety" standard after adopting the Rules of Professional Conduct: *Continental Resources, Inc. v. Schmalenberger*, 656 N.W.2d 730, 738 (N.D.2003); *City & County of Denver v. County Court of City & County of Denver*, 37 P.3d 453, 456 (Colo.Ct.App.2001); *Robertson v. Wittenmyer*, 736 N.E.2d 804, 809 (Ind.Ct.App.2000); *Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201, 536 A.2d 243, 251 (1988).

don the "appearance of impropriety" standard for review motions to disqualify counsel, deeming it "too vague and subjective." [45]

■ ¶ 19 Oklahoma adopted the Rules of Professional Conduct in 1988,[46] and Canon Nine of the Model Code of Professional Responsibility is no longer in effect.[47] The phrase "appearance of impropriety" appears in Canon Two of the Oklahoma Code of Judicial Conduct,[48] in the Oklahoma Code of Professional Conduct for Mediators,[49] as well as in the powers of the Interstate Insurance Product Regulation Commission.[50] Although we are not bound by the Comments of the Oklahoma Rules of Professional Conduct, we find the Comments to Rule 1.9 to be persuasive, and that the "appearance of impropriety" test as a standard for motions to disqualify counsel should be abandoned.[51]

■ ¶ 20 The Comment to Rule 1.9 provides in pertinent part:

The other rubric formerly used for dealing with disqualification is the appearance of impropriety proscribed in Canon 9 of the ABA Model Code of Professional Responsibility. This rubric has a two fold problem. First, the appearance of impropriety can be taken to include any new client-lawyer relationship that might make a former client feel anxious. If that meaning were adopted, disqualification would become little more than a question of subjective judgment by the former client. Second, since "impropriety" is undefined, the term "appearance of impropriety" is question-begging. It therefore has to be recognized that the problem of disqualification

*See* Oklahoma Rules of Professional Conduct, 5 O.S.2001 Ch. 1, App. 3.

**45.** These state courts have abandoned the "appearance of impropriety" standard after adopting the Rules of Professional Conduct: *Bottoms v. Stapleton,* 706 N.W.2d 411, 416 (Iowa 2005). *See also Roush v. Seagate Technology, L.L.C.,* 150 Cal.App.4th 210, 219, 58 Cal.Rptr.3d 275 (2006); *Klein v. Bristol Hosp.,* note 40, supra at 953 fn. 22; *Smith v. Coleman,* 2004 WL 1416254, *2 (Mich.Ct.App.2004); *Ex parte Terminix Intern. Co., L.P.,* 736 So.2d 1092, 1095–1096 (Ala.1998); *Schwartz v. Cortelloni,* 177 Ill.2d 166, 226 Ill. Dec. 416, 685 N.E.2d 871, 878 (1997); *Barragree v. Tri–County Elec. Co-op., Inc.,* 263 Kan. 446, 950 P.2d 1351, 1363 (1997); *Adoption of Erica,* 426 Mass. 55, 686 N.E.2d 967, 973 (1997); *Richardson v. Griffiths,* 251 Neb. 825, 560 N.W.2d 430, 436 (1997); *Anderson Producing Inc. v. Koch Oil Co.,* 929 S.W.2d 416, 426 (Tex.1996); *Adam v. Macdonald Page & Co.,* 644 A.2d 461, 464–465 (Me.1994); *In re Marriage of Carter,* 862 S.W.2d 461, 465 (Mo.Ct.App.1993); *Jesse by Reinecke v. Danforth,* 169 Wis.2d 229, 485 N.W.2d 63 (1992); *Emerald Partners v. Berlin,* 564 A.2d 670, 677 (Del.Ch.,1989); *State ex rel. Bryant v. Ellis,* 301 Or. 633, 724 P.2d 811, 814 (1986). This is largely due to the fact that when the American Bar Association proposed the Model Rules of Professional Conduct, Rule 1.7 was drafted specifically to remove the appearance of impropriety test because the test was deemed "too vague" and presented "severe problems." *See* John W. Castles III & Laurie E. Foster, *Conflicts and Lawyer Disqualification,* Nat'l L.J., Feb. 6, 1984, at 16, col. 3.

**46.** The Oklahoma Rules of Professional Conduct were adopted in 1988 and are found at Oklahoma Rules of Professional Conduct, 5 O.S. Supp.2007 Ch.1, App. 3–A.

**47.** The Code of Professional Responsibility was superceded by the Rules of Professional Conduct.

**48.** Canon 2, The Oklahoma Code of Judicial Conduct, 5 O.S. Supp.2006 Ch. 1, App. 4, provides in pertinent part:

A Judge Should Avoid Impropriety and the Appearance of Impropriety in All of the Judge's Activities.

**49.** App. A(B)(4)(a)(3), Rules and Procedures for Dispute Resolution Act, 12 O.S.2001, Ch. 37, App. provides:

The mediator shall work within the policy of the sponsoring agency, and shall avoid the appearance of impropriety.

**50.** Title 36 O.S. Supp.2006 § 7004(C), Art. 4(13–14) provides:

The Commission shall have the following powers . . .
13. To accept any and all appropriate donations and grants of money, equipment, supplies, materials and services, and to receive, utilize and dispose of the same; provided, that at all times the Commission shall strive to avoid any appearance of impropriety;
14. To lease, purchase, accept appropriate gifts or donations of, or otherwise to own, hold, improve or use, any property, real, personal or mixed; provided, that at all times the Commission shall strive to avoid any appearance of impropriety;

**51.** "Scope," The Oklahoma Rules of Professional Conduct, 5 O.S.2001 Ch. 1, App. 3–A provides in pertinent part:

. . . Comments do not add obligations to the Rules, but provide guidance for practicing in compliance with the Rules. . . .

cannot be properly resolved either by simple analogy to a lawyer practicing alone or by the very general concept of appearance of impropriety.[52]

Although this Comment relates to the slightly different issue of when a lawyer may represent a client against a former client, its reasoning is helpful here. One of the reasons behind the ethical rules forbidding conflicts in representation is that an attorney should not gain an unfair advantage for a current client against a former client by possessing information which the attorney could not have obtained but for the former client's confidential disclosures.[53] The Bank is alleging just such an unfair advantage here, although under different circumstances.

¶ 21 The Comment to Rule 1.9 reveals the excessive subjectivity inherent in the "appearance of impropriety" standard. The comment essentially states that: 1) it would be patently unfair to base the determination of what appears to be improper on the perceptions of the party seeking disqualification; and 2) nowhere in the Model Code of Professional Responsibility or in the Oklahoma Rules of Professional Conduct is the term "impropriety" defined. If it is difficult to determine whether an attorney's conduct falls within the bounds of the undefined term "impropriety," how much more difficult to determine whether an attorney's conduct

conveys the appearance of impropriety? Because the right to employ the counsel of one's choice is fundamental and a disqualification order is a drastic measure, the "appearance of impropriety" test is an insufficient basis for a disqualification order.

¶ 22 Because we find the "appearance of impropriety" test to be insufficient, we cannot adopt the more expansive standard urged by the Bank—that any doubt about the appearance of the propriety of an attorney's actions must be resolved in favor of disqualification. Any competent attorney can devise a creative argument to cast a shadow of a doubt about nearly anything, and it would be possible in nearly any suit to create a shadow of a doubt about the very subjective determination of the appearance of an opposing attorney's actions. Requiring only so minimal a showing as the existence of "any doubt" to carry a motion to disqualify counsel would create too great a potential for abusive motions to disqualify counsel, employed as procedural weapons.[54]

¶ 23 Although it does not address precisely the same issue, the teaching of *Towne v. Hubbard*, 2000 OK 30, 3 P.3d 154, is most helpful here. There, the Court held that the proper test for granting a motion to disqualify counsel is whether real harm to the integrity of the judicial process is likely to result if

*See State ex rel. Okla. Bar Ass'n v. Upton*, 1999 OK 92, ¶ 17, 991 P.2d 544.

52. Comment, Rule 1.9, Oklahoma Rules of Professional Conduct, 5 O.S.2001 Ch. 1, App. 3–A. Rule 1.9 provides:
(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.
(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
(1) whose interests are materially adverse to that person; and
(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client consents after consultation.
(c) A lawyer who has formerly represented a client in a matter or whose present or former

firm has formerly represented a client in a matter shall not thereafter:
(1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has been generally known; or
(2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

53. Rule 1.9(a), The Oklahoma Rules of Professional Conduct, see note 52, supra.

54. The district court noted this difficulty. The Honorable J. Michael Gassett, Transcript of September 8, 2006 Motion Hearing, p. 27, provides in pertinent part:
... Many of the cases cited by the Bank say that any doubt has to be resolved in favor of disqualification. You know, as you probably heard me say it before, even in a criminal case, the standard is beyond a reasonable doubt. So, this is stronger than even that standard....

counsel is not disqualified.[55] The burden rests with the moving party to establish the likelihood of such harm by a preponderance of the evidence.[56] In order to determine that an attorney should be disqualified based on conflict of interest or improper possession of confidential information, the trial court must hold an evidentiary hearing and must include in its disqualification order a specific factual finding that the attorney had knowledge of material and confidential information.[57]

¶ 24 The trial court in this cause did not apply the proper standard when it granted the Bank's motion to disqualify Wilkinson. Not only does the record reflect that district court seems to have applied the "appearance of impropriety" test, it also appears that it held that any doubt must be resolved in favor of disqualification.[58] Finally, while the district court did hold an evidentiary hearing on the matter, it made no factual finding in its order that Wilkinson had knowledge of material and confidential information.[59]

## CONCLUSION

¶ 25 A party litigant's right to employ the counsel of his or her choice is fundamental. A disqualification order is a drastic measure. The standard for granting a motion to disqualify counsel is whether real harm to the integrity of the judicial process is likely to result if counsel is not disqualified. If a trial court grants a motion to disqualify counsel based on conflict of inter-

est or improper possession of confidential information, it must hold an evidentiary hearing and make a specific factual finding that the attorney had knowledge of material and confidential information. Because the district court did not apply the correct standard to the motion to disqualify counsel, we vacate the district court's order disqualifying Wilkinson from representation of Phillips and Wilbanks Securities and remand for proceedings consistent with this opinion.

**DISTRICT COURT ORDER VACATED; CAUSE REMANDED.**

WINCHESTER, C.J., EDMONDSON, V.C.J., OPALA, KAUGER, WATT, TAYLOR, COLBERT, JJ., concur.

HARGRAVE, J., concurs in result.

---

**55.** *Hayes v. Central States Orthopedic Specialists, Inc.*, see note 23, supra at ¶ 10; *Towne v. Hubbard*, see note 20, supra at ¶ 15. *Towne* addressed a motion to disqualify counsel in a guardianship proceeding. In guardianship proceedings, the right to the assistance of counsel is provided by statute and protected by Constitutional guarantees of due process, and the procedures for the removal of counsel are also provided by statute. *See* 30 O.S.2001 § 3–107(G).

**56.** *See In re BellSouth Corp.*, note 30, supra; *Evans v. Artek Sys. Corp.*, note 30, supra; *Centimark Corp. v. Brown Sprinkler Serv. Inc.*, 85 Ohio App.3d 485, 620 N.E.2d 134, 137 (1993); *Spears v. Fourth Court of Appeals*, note 39, supra; *Alexander v. Superior Court in and for Maricopa County*, note 39, supra.

**57.** *Piette v. Bradley & Leseberg*, see note 4, supra at ¶ 2.

**58.** The Honorable J. Michael Gassett, Transcript of September 8, 2006 Motion Hearing, p. 27–28, provides in pertinent part:
   ... As I think I told Mr. Wilkinson a long time ago when he wanted me to rule at the time, I said, you know, I've got at least some doubt, and it goes beyond that today. I think the Bank has met its burden....

**59.** *Piette v. Bradley & Leseberg*, see note 4, supra. *See* Order, October 27, 2006, Record, p. 742–744; The Honorable J. Michael Gassett, Transcript of October 4, 2006 Motion Hearing, p. 19, which provides in pertinent part:
   ... I don't have to find that Mr. Wilkinson was unethical to make the ruling that I made ... I made the ruling based upon the authorities that counsel cited ... those authorities do not require this Court to find that there has been a violation of the rules of professional conduct or a finding that he has confidential information that he's not entitled to....